UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FREDDY PICA,

                              Plaintiff,

                                                    **Hon. Hugh B. Scott**


                                                    **12CV927S**

              v.
                                                    **Report
                                                    &
                                                    Recommendation**


ANGIE GORG[1], BEN OAKES,
WESLEY CANFIELD,

                              Defendants.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 20) (dispositive jurisdiction).  The instant matter before the Court is a motion of

defendants Benjamin Oakes and Dr. Wesley Canfield (Docket No. 35)[2] for summary judgment.

Responses initially were due by January 29, 2016 (Docket No. 39), but plaintiff claimed that he

did not receive the moving papers (Docket Nos. 40, 41, plaintiff's letters to this Court; <u>see</u>

Docket No. 45, plaintiff's letter Mar. 10, 2016) and the deadline was extended (Docket No. 42).

Plaintiff then formally moved to extend the briefing schedule (Docket No. 43) which was

granted (Docket No. 44), with his response due by April 11, 2016, and any reply by April 21,

2016 (<u>id.</u>; <u>see</u> Docket No. 46).  Plaintiff then made another request for a further extension of his

---

        [1]Court Clerk is requested to amend the caption in this action to correct the name of
defendant Angie Gorg from "Angie Goo" or "Gog".
        [2]In support of their motion, defendants submit their Statement of Facts, Docket No. 36;
the Declaration of defendant Wesley Canfield, Docket No. 37; Defendants' Memorandum of
Law, Docket No. 38.  In opposition, plaintiff did not submit a response.

response deadline, this time 45 days from the Court's receipt of that request (Docket No. 47); that request was granted and plaintiff had until June 2, 2016, to respond and moving defendants had until June 10, 2016, to reply (Docket No. 47).  Given the age of this motion, no further extension of briefing deadlines were considered (id.).  Plaintiff, however, did not respond and there was no indication that this last briefing Order was not received by him, cf. W.D.N.Y. Loc. Civ. R. 5.2(d).

*Plaintiff's Last Known Address*

The last word from plaintiff was his letter dated March 31, 2016, but postmarked April 14, 2016, and received April 18, 2016, requesting extension of his response time (Docket Nos. 47, 49 (envelope)).  On April 18, this Court issued the last extension of briefing (Docket No. 48), sending that Order to plaintiff at Elmira Correctional Facility ("Elmira"), without any indication that this Order was returned as undeliverable or that plaintiff was transferred.  A recent check of the New York State Department of Corrections and Community Supervision Inmate Information website reveals that plaintiff currently is housed at Clinton Correctional Facility[3] ("Clinton"), but that site does not disclose when plaintiff was transferred from Elmira. Plaintiff did not report any change in his address as required under this Court's Local Civil Rule 5.2(d), see also Rule 5.2(i) requiring pro se litigant compliance with the rules.  Plaintiff during the course of this action has been transferred to other facilities and has notified the Court of his changed address (for example, noting the transfer from Mohawk Correctional Facility to

---

[3]As a courtesy and out of an abundance of caution, a copy of this Report & Recommendation will be sent to plaintiff at Clinton Correctional Facility as well as to his address of record, Elmira Correctional Facility.  The Court Clerk will **not** be instructed to change this address unless this Court receives an acknowledgement from the parties that plaintiff is housed in a different facility.

Auburn Correctional Facility in November 2015) or the Court noted a new address from the location plaintiff from which he mailed his latest correspondence (Docket No. 43).  The latter method had the change of his address of record with this Court to Elmira (see Docket No. 44).  Under Local Civil Rule 5.2(d) "the Court assumes that the litigant received papers sent to the address provided," and as such presumes here that plaintiff received the last briefing Order at Elmira and, for whatever reason, failed to respond to defendants' motion.  Thus, this Court will proceed to consider the defense motion.

## BACKGROUND

This is a civil rights action (Docket No. 1, Compl.) commenced by an inmate proceeding pro se who was granted leave to proceed in forma pauperis (Docket No. 6).  Plaintiff alleges that, while incarcerated at Southport Correctional Facility (hereinafter "Southport"), he suffers from significant back pain and problems since 2002, diagnosed with a disc bulge at L5-S1, encroachment of the nerve root, and "discongenic disease, spondylosis and diffuse posterior disc bulge from L1-L2 through L5-S1" (id., Order at 1; see Docket No. 1, Complaint ¶¶ 12, 17-18, 21, 24-25).  He had been prescribed physical therapy, later Lyrica and Tranadol (Docket No. 6, Order at 1; see Docket No. 1, Compl. ¶¶ 19, 26).

He alleges that, between Mar. 1-6, 2012, defendant nurse Angie Gorg crushed the Lyrica for administration, which plaintiff claims was "cruelly" done and rendered the medication ineffective, that Gorg did that in retaliation for plaintiff's complaints and grievances lodged against Gorg and defendant Benjamin Oakes (a physician's assistant) (Docket No. 6, Order at 1-2; Docket No. 1, Compl. ¶¶ 27-29).  Defendant Dr. Wesley Canfield then saw plaintiff and plaintiff alleges that Dr. Canfield and Oakes "reached an incongruent dissent comprising an

increase in plaintiff's pain medication," and that they delayed providing plaintiff his prescribed 50 grams of Lyrica, three times per day, which (combined with not having him see a pain management specialist) failed to decrease plaintiff's intolerable pain for six months (Docket No. 6, Order at 2; Docket No. 1, Compl. ¶¶ 30-33).  Plaintiff also alleges that he complained to Dr. Canfield about his knee pain in relation to his back pain and that radiology reports showed that plaintiff's "Medial Femorotibial and PatelloFemoral joints are clearly degenerated" (Docket No. 6, Order at 2; Docket No. 1, Compl. ¶¶ 34-35).  Plaintiff seeks to permanently enjoin defendants, their agents, and those acting in concert or in cooperation with them from further violating his rights; a declaratory judgment; compensatory damages of $75,000; punitive damages of the same amount; and recovery of costs associated with this case (Docket No. 1, Compl. at Section VI, "Relief Requested").

Defendants Oakes and Dr. Canfield answered (Docket No. 11).  Plaintiff had meanwhile requested the Court Clerk enter default (Docket No. 10), with entry of default done on January 16, 2014; defendants moved to vacate that entry (Docket No. 13) which was granted (Docket No. 24; see Docket No. 21 (Report & Recommendation)).

Defendant Gorg was not served and this Court ordered defense counsel to advise the Court of an address for service of Ms. Gorg (Docket No. 21, Report at 4-5).  After receiving that information from defense counsel, the United States Marshal was directed to serve the Summons and Complaint upon Ms. Gorg (Docket No. 22), but that Summons initially was returned as unexecuted (Docket No. 23) but then was returned as executed on September 4, 2014 (Docket No. 25).  She was granted an extension of time to appear and file her answer or motion (Docket No. 26).  Later, the summons served upon Gorg was returned executed on February 9, 2015,

noting that she was served on August 11, 2014 (Docket No. 28).  To date, Gorg has not appeared.

This Court then set a Scheduling Order (Docket No. 30) with discovery to be completed by August 31, 2015, and motions due by October 30, 2015 (id.).

*Defense Motion*

Defendants Oakes and Canfield now move for summary judgment and dismissal of this case, although only the two appearing defendants are currently moving (Docket No. 35).

According to defendants' Statement of Undisputed Facts (Docket No. 36), plaintiff was housed at Southport when these events occurred (id. ¶ 2).  Plaintiff alleges that defendants were deliberately indifferent to his medical needs by failing to treat properly his back pain (id. ¶ 5).  Defendants note assessment of plaintiff's leg and back pain from his reception assessment and subsequent examinations and testing prior to his assignment to Southport (id. ¶¶ 6-9, 10).  When drafted into Southport on July 10, 2007, plaintiff was noted to have a history of low back pain and he was given Robaxin, a muscle relaxant, three times a day (id. ¶ 10).  Plaintiff was seen by defendant Oakes in July 11, 2007, seeking stronger pain medication; Oakes prescribed Percogesic three times day (id. ¶ 11).  Plaintiff then was taking Ultram but sought stronger medication in August 2007; Oakes again prescribed Percogesic (id. ¶ 12).  In November 2007, plaintiff was recommended for a discectomy but that recommendation was denied by Central Health Services in July 2008 because his neuro and motor function exams were negative (id. ¶¶ 14, 15).

Plaintiff next was seen by physical therapy in January 2009 for plaintiff's increased low back and lower extremity pain; he was prescribed a TENS unit (id. ¶ 16).  Plaintiff saw the

physical therapist on April 30, 2009, and reported that he still had low back pain and it was not relived by medication or treatment; plaintiff was prescribed more frequent physical therapy sessions (id. ¶ 17).  On May 26, 2009, a note in plaintiff's medical record indicates that he refused physical therapy three times, so it was discontinued (id. ¶ 18).  Plaintiff was referred again to physical therapy in January 2010, with defendant Dr. Canfield reviewing and approving this request (id. ¶ 19).  Plaintiff then saw a physiatrist, a medical doctor or doctor of osteopathic medicine who specializes in physical medicine and rehabilitation, www.spine-health.com/glossary/physiatrist, for his low back pain, a request again approved by Dr. Canfield (id. ¶¶ 20-21).  The physiatrist, Dr. Andrew Morpurgo, diagnosed plaintiff and opined that he had radiculopathy with persistent radicular symptoms, recommending that plaintiff be prescribed Lyirca 50 mg. three times a day, Tramadol four times a day or (if reluctant to use Tramadol) Elavil at bedtime as well as a muscle relaxant like Robaxin (id. ¶ 21).  Plaintiff was approved for Lyrica on July 27, 2010, by defendant Oakes (id. ¶ 23).  On July 30, 2010, a nursing note states that plaintiff spit out a nighttime dose of Lyrica, defendant Gorg advised a doctor of this and was instructed that if plaintiff spit out that medication again that it would be discontinued (id. ¶ 24).  On August 18, 2010, plaintiff's Lyrica dosage was increased to 100 mg. (id. ¶ 25).  Plaintiff's prescription of Lyrica was renewed (id. ¶ 27) and plaintiff was prescribed a different muscle relaxant (id. ¶ 26).

On November 10, 2010, plaintiff saw defendant Gorg and complained of low back pain and difficulty moving his bowels despite taking Lyrica.  He sought a change in medication from Lyrica.  Gorg noted that plaintiff did not appear to be in acute distress.  (Id. ¶ 28.)  Oakes ordered plaintiff to have Elavil 25 mg. at bedtime for 30 days (id.).  On November 15, 2015, plaintiff

6

complained the Elavil was making him dizzy and sleepy in the morning (id. ¶ 29) and that medicine was discontinued (id.).

On February 16, 2011, while in Downstate Correctional Facility, plaintiff was given a refill of Lyrica and Ultram (id. ¶ 30).

Defendants contend that crushing Lyrica (as alleged as deleterious by plaintiff) would have no effect on its effectiveness (id. ¶ 31; Docket No. 37, Dr. Canfield Decl. ¶ 29). Dr. Canfield also notes that defendant Gorg was not noted as having seen plaintiff on March 1-6, 2012, as he alleges (Docket No. 37, Dr. Canfield Decl. ¶ 29). If medication was crushed, there was a penological reason since it was to avoid "cheeking," the hiding of solid pills inside an inmate's mouth and not swallowing it. Also, Lyrica was ordered as "Direct Observed Therapy," or "DOT," and thus could be crushed before being dispensed. (Id. ¶¶ 29, 10.)

On June 17, 2011, plaintiff saw Dr. Canfield again complaining that his dosage of Lyrica was not enough (Docket No. 36, Defs. Statement ¶ 32). Dr. Canfield recommended an increase to 300 mg. dosage but the pharmacy denied it since 300 mg. was the maximum dosage allowed (id.). Dr. Canfield also prescribed usage of the TENS unit for more than an hour per day (id.). After plaintiff's complaints about knee pain, Dr. Canfield ordered an x-ray of plaintiff's knee, and the x-ray results were normal and not requiring immediate treatment (id. ¶¶ 32-33). Plaintiff continued to complain about knee pain in August 2011, but, on August 11, 2011, plaintiff was seen by defendant Gorg and did not appear to be in acute distress and did not have difficulty ambulating (id. ¶ 34). On August 24, 2011, the note in plaintiff's medical records indicate that the doctor declined to recommend an orthopedic consult for the knee pain because plaintiff was not in acute distress (id. ¶ 38). Plaintiff had a physical therapy consult on his knee on

September 7, 2011, being recommended therapy two times a week with strengthening exercises (id. ¶ 39).  Plaintiff then made other sick calls in August 2011, complaining about headaches (id. ¶¶ 35-37).

On a sick call on September 13, 2011, plaintiff sought to discontinue Flexeril and wanted Baclofen as a muscle relaxant; defendant Oakes discontinued Flexeril (id. ¶ 40).  On September 21, 2011, Dr. Canfield reviewed plaintiff's chart and prescribed Lyrica 100 mg. for 30 days with five refills (id.¶ 41).  A subsequent blood test revealed that plaintiff was not taking the full dosage of Lyrica so Oakes discontinued it (id. ¶ 42).  Plaintiff then refused a medical call out and pain medication on September 27, 2011, and the next day demanded a knee brace and a new "real" doctor (id. ¶¶ 43, 44).  Plaintiff completed and was discharged from physical therapy on September 30, 2011, but he was to continue his home exercise program (id. ¶ 45).  Plaintiff then asked about a right knee sleeve that was ordered by physical therapy and was told that it was on order (id. ¶¶ 46-47).

The moving defendants now argue that plaintiff cannot sustain his medical deliberate indifference claim against defendants Oakes and Dr. Canfield since both treated plaintiff according to the standard of care (Docket No. 38, Defs. Memo. at 4-8).

Plaintiff has not responded to this motion.

## DISCUSSION

I.   Applicable Standards

A.   Motion for Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

As with pleadings, the filings of a pro se plaintiff in response to a summary judgment motion are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

B.       Eighth Amendment Standards—Deliberate Indifference

Plaintiff's claims are under the Eighth Amendment's prohibition against cruel and unusual punishment.  In order to state a claim for inadequate medical treatment under the Eighth Amendment, the plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain.") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Estelle, supra, 429 U.S. at 104), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious" for the objective component contemplates

10

"a condition of urgency, one that may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. Wilson v. Seiter, supra, 501 U.S. at 302.  Mere negligent treatment or malpractice upon a plaintiff, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).

II.     Application

Plaintiff, by not responding to this motion, in particular fails to submit a counterstatement of facts to defendants' statement, hence, under this Court's Local Civil Rule 56 the facts in defendants' Statement (Docket No. 36) are deemed submitted.

The moving defendants produced plaintiff's medical record during the relevant period while he was in Department of Corrections and Community Supervision's custody, especially during his time at Southport (Docket No. 37, Dr. Canfield Decl., Ex.).  Review of that record shows that plaintiff received care for his back and knee pain while at Southport.  Plaintiff consistently sought stronger medication for that pain.  But plaintiff had also discontinued taking certain medication or took less than the prescribed amounts of other medicines, causing defendants ultimately to curtail that treatment.  This is not cruel and unusual punishment under the Eighth Amendment.

At worse, plaintiff alleges negligence or malpractice in the manner of his treatment.  But plaintiff was treated.  His complaints consist of medication either not being effective or being harmful enough to him that he sought alternative medication.  He also in effect engaged in self-treatment by discontinuing certain medications.  Plaintiff's claims are his disagreement with the

11

prescribed treatment regime by defendants; these do not reach the level of a constitutional violation, Polanco v. Dworzack, 25 F. Supp. 2d 148, 151 (W.D.N.Y. 1998) (Siragusa, J.).  As noted by Judge Siragusa, "it is well settled that a prisoner does not have the right to the treatment of his choice," id. (citing Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y. 1992) (Larimer, J.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992)).  "Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates," Ross, supra, 784 F. Supp. at 44.  He has not proven the objective prong of the deliberate indifference standard under the Eighth Amendment.

For example, plaintiff alleges that crushing Lyrica rendered it ineffective, but he presents no expert testimony to support this allegation or to counter the moving defendants' contention that it had no effect on that medication.  Furthermore, defendants have a penological rationale for crushing that medication, to avoid inmates (such as plaintiff) hiding or cheeking pills, see, e.g., Jacoby v. Phelix, No. 9:07cv872, 2010 U.S. Dist. LEXIS 44222, at *2 (N.D.N.Y. Mar. 31, 2010) (Baxter, Mag. J.) (inmate issued misbehavior report for cheeking pills); Encarnacion v. Silverberg, No. 9:13cv1000, 2015 U.S. Dist. LEXIS 128312, at *6 & n.7 (N.D.N.Y. July 7, 2015) (inmate plaintiff caught cheeking pills and prescribed medication was discontinued, with cheeking defined as "when an inmate attempts to hide medication in his cheek, or under his tongue, in order to sell or barter medications, or sometimes to accumulate a large quantity of medication in order to get high.  This is a important [sic] consideration when physicians prescribe medications in the prison context," citing witness declaration); Vail v. Lashway, No. 9:12-cv-1245, 2014 U.S. Dist. LEXIS 129516, at *11 (N.D.N.Y. July 16, 2014) (same);

<u>Guarneri v. Wood</u>, No. 08cv792, at *10 (N.D.N.Y. Sept. 2, 2011) (inmate cheeked medication, refused to take it, and attempted to flush pills).

Also, plaintiff has not shown that defendants had the sufficiently malicious state of mind to intentionally deprive him of needed medication to meet the subjective element for a deliberate indifference claim.

Plaintiff also seeks injunctive relief against these defendants, but plaintiff is no longer at Southport to be treated by these defendants.  Thus, this form of relief should be **denied** even if plaintiff's claims somehow survive.

Thus, moving defendants Oakes and Canfield's motion for summary judgment (Docket No. 35) should be **granted** dismissing claims as to them.

III.     Results

Assuming adoption of this Report & Recommendation and dismissal of claims against the two moving defendants, claims would remain against the yet to appear defendant Gorg.  She was granted an extension of time to appear and answer or move (Docket No. 26, Order of Sept. 10, 2014), giving her 60 days from the date service was acknowledged, or from July 28, 2014, to answer; her answer was due by Friday, September 24, 2014.  No answer or appearance was filed and she did not join in the codefendants' present motion (<u>cf.</u> Docket No. 35).  Gorg did not move to vacate the earlier default entered against her codefendants (<u>cf.</u> Docket Nos. 10, 13) and the Report & Recommendation on the motion to vacate the entry of default noted that Gorg had yet to be served (Docket No. 21, Report at 4, <u>Valentin</u> Order for defense counsel to locate Gorg or Goo; Docket No. 22 (Marshal to serve Gorg)).  Since defendant Gorg has not yet appeared or answered, even if this motion were granted, the case would not be dismissed in its

entirety as one served defendant (Gorg) remains.  Gorg remains potentially the subject to entry of default.

## CONCLUSION

Based upon the above, it is recommended that defendants Canfield and Oakes' motion for summary judgment (Docket No. 35) be **granted**.  This action, however, should not be dismissed because plaintiff still has claims against non-moving (and non-appearing) defendant Angie Gorg.

Out of an abundance of caution, a copy of this Report will be mailed to plaintiff at **Elmira and Clinton Correctional Facilities**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 27, 2016

15